USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANA PELL,

                    Plaintiff,

  -against-

YONKERS CITY SCHOOL DISTRICT,

                    Defendant.

No.: 23-CV-10398-NSR

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Ana Pell, proceeding *pro se*, brings this action against the Yonkers City School District ("Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; 42 U.S.C. § 1981 ("Section 1981"); the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–297, N.Y. City Admin. Code §§ 8-101–8-131.

    Presently before the Court is Defendant's motion to dismiss all claims in Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion is GRANTED.

## FACTUAL BACKGROUND

    The following facts are derived from the Amended Complaint ("Am. Compl.") and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opp."). *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). At this

1

stage of the proceeding, the facts asserted are accepted as true and construed in the light most favorable to the Plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff, Ana Pell, is a Hispanic woman in her sixties who was employed by Defendant as a substitute teacher from May 2019 to September 2022. (Am. Compl. at 4.) She alleges that she was subjected to discriminatory treatment because of her "age, race, and nationality." (Opp. at 2.) Plaintiff asserts three bases for her claims.

First, Plaintiff claims that she was intentionally misclassified in her employment position. Plaintiff alleges that she believed she accepted a per diem position but was instead assigned to a full-time position. (*Id.* at 6.) Despite performing full-time duties, the Plaintiff was treated and compensated as a per diem employee, resulting in less favorable employment terms and compensation. (*Id.* at 7.) Moreover, Plaintiff claims she was "overworked" by having to cover eight (8) classes where she was responsible for preparing lesson plans for each class. (*Id.*) Meanwhile, other substitute teachers were provided with lesson plans and did not have to prepare them independently. (*Id.*) Plaintiff believes that this placement was intentionally motivated by discriminatory animus, which hindered her ability to advance professionally. (*Id.* at 3.)

Second, Plaintiff claims she was denied proper workplace resources. Plaintiff alleges she was not provided access to her district-created work email, and was not issued an employee ID badge, which she claims restricted her ability to enter the school building and access essential areas like the printing and resource rooms. (Opp. at 3.) She alleges that other similarly situated substitutes were provided with an ID and were able to use those facilities. (*Id.*) Further, Plaintiff alleges that she was also denied access to the Frontline Education system, which substitute teachers use to manage their teaching assignments. (*Id.*)

Third, Plaintiff asserts that her treatment was part of a broader pattern of discriminatory conduct directed at older immigrant women of Hispanic descent. She alleges that her position was previously held by "an older immigrant Hispanic woman . . . [that] had been forced to leave . . . at the same time of [Plaintiff's] placement." (*Id.* at 3.) Plaintiff further alleges that another older immigrant woman was similarly misled about the terms of her employment by being "deceptively" placed in a long-term role, and likewise subjected to discriminatory treatment in the workplace. (*Id.* at 4.)

Based on the foregoing, Plaintiff brings claims under Title VII and Section 1981, alleging that she was subjected to discriminatory treatment based on her race and national origin. She also asserts an age discrimination claim under the ADEA, alleging that she was treated less favorably than similarly situated younger employees. In addition, Plaintiff invokes the NYSHRL, asserting that Defendant's actions constituted unlawful discrimination. Finally, she alleges that Defendant's conduct gives rise to claims for hostile work environment and retaliation.

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 28, 2023, by filing her Complaint. (ECF No. 1.) Thereafter, Plaintiff filed an Amended Complaint on April 10, 2024. (ECF. No. 22, "Am. Compl.")  On October 7, 2024, Defendant filed a motion to dismiss and a Memorandum of Law in Support. (ECF Nos. 35-36, "MoL.") Plaintiff filed a Memorandum of Law in Opposition on October 9, 2024. (ECF No. 38, "Opp.") Defendant subsequently filed a Reply Memorandum of Law. (ECF No. 37, "Reply.") The Court also notes that Plaintiff filed a separate declaration in opposition, which is functionally a Surreply. (ECF Nos. 39-40.) In it, Plaintiff acknowledges that she failed to address and respond to certain of Defendant's arguments in the Opp., but that she did not intend to abandon those claims. (*Id.*)

## LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) requires that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows a defendant to seek dismissal a claim where the complaint fails to state a claim upon which relief can be granted. In deciding a Rule 12 (b)(6) motion, the Court limits its review of "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken." *Hu v. City of New York,* 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009). A claim is facially plausible when the plaintiff pleads facts sufficient to allow a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Instead, the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). While courts are obligated to accept all factual allegations in the complaint as true, they are "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678.

In cases involving *pro se* plaintiffs, courts apply "less stringent standards than those drafted by lawyers." *Thomas v. Westchester County,* 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013). In accordance with this standard, courts construe their submissions liberally and interpret them to raise the strongest arguments they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994). Additionally, courts may "consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original

4

complaint." *Walker*, 717 F.3d at 122 n.1. However, even under this liberal standard, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).

## DISCUSSION

### I. Unopposed Arguments

As an initial matter, the Court must determine whether Plaintiff has abandoned certain of her claims by failing to substantively oppose the arguments raised in Defendant's motion to dismiss. (*See generally* Opp.) "At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." *Horsting v. St. John's Riverside Hospital*, No. 17-CV-3230, 2018 WL 1918617, at *6 (S.D.N.Y. Apr. 18, 2018). "A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Walker v. City of New York,* No. 14–CV–808, 2015 WL 4254026, at *3 (S.D.N.Y Jul. 14, 2015) (quoting *Lipton v. Cnty. Of Orange, N.Y.,* 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)).

In most cases, when a party omits a claim from an amended pleading, it is presumed that the party no longer wishes to pursue that claim. *Id.* But where the plaintiff is proceeding *pro se*, courts are less inclined to consider claims abandoned due to failure to address them in their motion papers. *See Crawford v. Bronx Cmty. Coll.*, No. 22 CIV. 1062 (PGG) (SLC), 2023 WL 11862082, at *9 n.7 (S.D.N.Y. July 19, 2023), report and recommendation adopted, No. 22 CIV. 1062 (PGG) (SLC), 2024 WL 3898361 (S.D.N.Y. Aug. 21, 2024) (collecting cases). Accordingly, the Court will consider all of *pro se* Plaintiff's claims and interpret them to raise the strongest arguments possible.

## II. Title VII Claim

Plaintiff asserts a Title VII claim based on race and national origin. (Am. Compl. at 3.) Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In adopting this language, 'Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination based on race, religion, sex, or national origin.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023). The Defendant argues that most of the Plaintiff's allegations supporting her Title VII claim are procedurally barred as untimely.

### A. Timeliness of Plaintiff's Allegations

Before bringing a claim under Title VII, a plaintiff must file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See Byas v. Yonkers Public Schools*, No. 23-CV-8437, 2025 WL 963977, at *6 (S.D.N.Y. Mar. 31, 2025). In New York, which is a deferral state, the charge must be filed within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). However, an exception to this rule applies when the plaintiff experiences a "continuous practice and policy of discrimination." *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333 (2d Cir. 1992) (quoting *Miller v. Int'l Tel. & Tel. Corp.,* 755 F.2d 20, 25 (2d Cir. 1992)). Under such circumstances, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Id.* If a continuing violation is found, a court must then "consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Snowden v. Southerton*, No. 22-CV-514, 2023 WL 3601654, at *7

6

(S.D.N.Y. May 23, 2023). The continuing violation doctrine is heavily disfavored in the Second Circuit, and courts apply it only in "compelling circumstances." *Falinski v. Kuntz,* 38 F. Supp. 2d 250, 257 (S.D.N.Y. 1999) (citing *Davis v. City Univ. of New York,* No. 94 CIV. 7277, 1996 WL 243256, at *10 (S.D.N.Y. May 8, 1996)).

Here, Plaintiff filed her EEOC complaint on June 5, 2023 (Am. Compl. at 9), and the EEOC's right to sue letter was issued August 28, 2023. Only conduct occurring on or after August 9, 2022, falls within the applicable 300-day window. Most of Plaintiff's allegations predate the cutoff, except for her claims that she was wrongfully terminated in September 2022 and that her calls went unanswered afterward. (*See id.*) Standing alone, these allegations appear isolated and distinct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.").

A continuing violation may be established by (1) demonstrating that the employer engaged in an ongoing discriminatory policy or practice, or (2) the related discriminatory acts occurred over time, were left unremedied, and collectively constitute a discriminatory policy or practice. *See Falinski*, 38 F. Supp. 2d at 257 (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994)). However, the doctrine does not apply to isolated or discrete acts of discrimination that are unrelated to any broader discriminatory policy or mechanism. *Id.* "Examples of discrete acts include disparate disciplining, termination, failure to promote, and denial of a preferred job position." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019) (collecting cases). Plaintiff's allegation of being wrongfully terminated falls within the isolated, discrete acts that are not actionable under the continuing violation doctrine. *See id.*; *Morgan,* 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are

7

easy to identify."). Therefore, such allegations are insufficient facts alleged to invoke the continuing violation doctrine. *See e.g., Langella v. Mahopac Cent. Sch. Dist.,* No. 18-CV-10023, 2020 WL 2836760, at *5 (S.D.N.Y. May 31, 2020) (explaining that the continuing violation doctrine does not apply to isolated or discrete acts).

Plaintiff also alleges that at least one other substitute teacher with shared protected characteristics was "forced out" under comparable circumstances. (Opp. at 4.) In another instance, a similarly situated individual "experienced discrimination . . . and was also deceptively placed in a long term Prep Substitute role . . . ." (*Id.)* However, these allegations, without more details, are conclusory and do not plausibly allege a nexus to a broader discriminatory scheme. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) ("Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."). Consequently, any alleged wrongful conduct occurring before August 9, 2022, is time-barred and will not be considered by the Court in evaluating Defendant's 12(b)(6) motion. *See Morgan,* 536 U.S. at 114 ("Only incidents that took place within the timely filing period are actionable.").

### B. Failure to State a Claim

Despite most of Plaintiff's allegations being time barred, the Supreme Court has clarified that a single discrete act may give rise to a Title VII claim. *See id.* at 113 ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). In the present case, the Court must consider whether the conduct that occurred within the statutory window is sufficient to state a Title VII claim. Specifically, Plaintiff alleges that Defendant wrongfully terminated her and did not return her phone calls afterward. (Opp. at 9-10.)

To state a claim for employment discrimination under Title VII, a plaintiff must allege facts that give rise to a plausible inference that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 83 (2d Cir. 2015). Here, only the last element—an inference of discrimination—is in dispute.

"An inference of discrimination can arise from circumstances including . . . invidious comments about others in the employee's protected group, more favorable treatment of employees not in the protected group, or the sequence of events leading to the alleged adverse action." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 97 (S.D.N.Y. 2023) (quoting *Littlejohn v. City of N.Y.,* 795 F.3d 297, 321 (2d Cir. 2015)) (internal quotation marks omitted). At the pleading stage, a plaintiff need only present minimal evidence supporting an inference of discrimination to meet the requisite threshold. *Doe v. Columbia Univ.,* 831 F.3d 46, 54 (2d Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). While Plaintiff alleges that she is a member of a protected class, female Hispanic, she provides no facts to support a finding of invidious or prejudicial comment(s) by the Defendants. Thus, the Amended Complaint contains no factual allegations that plausibly connect Plaintiff's termination to her protected status.

The Amended Complaint, however, does refer to Plaintiff's status as a per diem substitute teacher. An inference of discrimination may be plausibly established by alleging that plaintiff was treated less favorably than similarly situated employees of other races or national origins. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). A plaintiff must also allege that "she was similarly situated in all

9

material respects to the individuals with whom she seeks to compare herself. *Id.* at 230. A plaintiff need only to show that her protected characteristic was a "motivating factor" in the alleged discriminatory conduct. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003).

Here, Plaintiff relies on the general belief that Defendant's conduct must have been a result of discriminatory intent. (*See* Opp. at 10.) Plaintiff's conclusory allegations, without more, do not support an inference of discriminatory animus. *See Vega*, 801 F.3d at 87 (noting that at the pleadings stage, a Title VII plaintiff must plead sufficient facts to support a plausible inference of discrimination). While the requisite threshold is low—requiring only minimal evidence— this element has been met where plaintiffs have alleged specific circumstances suggesting bias. For example, in *Vega*, the Second Circuit found a plausible inference of discrimination where a Hispanic teacher was disproportionately assigned Spanish-speaking students while his similarly-situated co-workers were not assigned additional work. *Vega*, 801 F.3d at 88. Although, standing alone, these assertions are insufficient to support a finding of discrimination, the defendant's attempt to transfer the plaintiff to a school with a Hispanic principal, and assigning plaintiff to a classroom bearing a "University of Puerto Rico" banner, provided context to plaintiff's claim of discrimination. *Id.* at 88–89. In *Littlejohn*, this element was satisfied when the plaintiff alleged that she was replaced by someone outside her protected class. 795 F.3d at 313.

In the present case, the Plaintiff has not alleged specific circumstances supporting a plausible inference of discrimination. Instead, she merely labels Defendant's conduct as discriminatory. (*See* Am. Compl. at 2) ("[I] believe that I was discriminated against because of my age, race and national origin."); (Opp. at 9) ("I was opposing my supervisor's discriminatory behavior." ). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Accordingly, because Plaintiff fails to allege facts giving rise to a

10

plausible inference of discriminatory motivation, her Title VII claim must be dismissed pursuant to Rule 12(b)(6).

### III.     Section 1981 Claim

Plaintiff asserts a claim pursuant to 42 U.S.C. § 1981 ("Section 1981"), alleging that she was subjected to discriminatory treatment based on her Hispanic origin. (Am. Compl. at 4.) Plaintiff's Section 1981 claim fails because it does not plausibly allege sufficient facts to support an inference of discriminatory intent by the Defendant.

Section 1981 provides:

> [A]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). To state a plausible claim pursuant to Section 1981, a plaintiff must allege facts supporting that (1) the plaintiff is a member of a racial minority, (2) the defendant's intent to discriminate on the basis of race, and (3) discrimination concerning one of the statute's enumerated activities. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir. 1993). Section 1981 claims of racial discrimination are generally analyzed under the same standard as Title VII claims of discrimination. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). However, Section 1981 claims are subject to a more stringent causation standard, requiring a showing of but-for causation where the plaintiff must show race was the determinative cause of the adverse action. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) ("To prevail, a

plaintiff must initially plead . . . *but for* race, [they] would not have suffered the loss of a legally protected right.") (emphasis added).

Plaintiff's Section 1981 is deficient because she does not plausibly allege facts that show her purported mistreatment was because of her race. Although discrimination in an employment context may implicate the right "to make and enforce contracts," Plaintiff does not allege facts showing that there was interference with her contractual rights based on her race. Plaintiff only offers a bald assertion that her mistreatment was due to her race without providing the Court with further factual support that connects the two. These sorts of bare pleadings fail to meet Section 1981's causation requirement.

"A plaintiff may raise such an inference by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham,* 230 F.3d at 39. While "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance," they do not need to be "identical." *Hu,* 927 F.3d at 96. A viable claim of disparate treatment requires facts sufficient to reasonably allow for the conclusion that the "[plaintiff] was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.*

Here, Plaintiff's complaint lacks specific allegations showing that her comparators are similarly situated in all material respects. Vague references to "other per diem substitutes", (Opp. at 3), or general claims that "other Hispanic women", (*Id.* at 4), faced similar treatment do not suffice. Without more facts, the Court cannot determine whether her comparators were "subject to the same standards governing performance evaluation

12

and discipline." *See Brown,* 756 F.3d at 230 (explaining that the judgment as to whether individuals are similarly situated depends on "whether the plaintiff and those [she] maintains were similarly situated were subject to the same workplace standards") (quoting *Graham*, 230 F.3d at 40). Specifically, she fails to provide essential information regarding her alleged comparators' pay rates, assigned schools, experience, job functions, qualifications, or other relevant factors. Absent such allegations, or other indicia of discrimination, Plaintiff's claim rests on mere speculation and fails to raise a plausible claim of discrimination. *See Mian,* 7 F.3d at 1088 (dismissing § 1981 claim because "conclusory allegations" without specific facts evidencing discriminatory intent were insufficient).

Accordingly, Plaintiff's Section 1981 claim must be dismissed pursuant to Rule 12(b)(6) for failure to state a plausible claim.

### IV. ADEA Claim

Plaintiff brings a claim under the ADEA, alleging that she was subjected to discriminatory treatment based on her age. This claim fails for the same reasoning as her Section 1981 claim.

The ADEA prohibits employers from taking discriminatory employment actions "because of [an] individual's age." 29 U.S.C. § 623(a)(1). To state a viable ADEA claim, a plaintiff must plausibly allege that: (1) she was at least 40 years old; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of age discrimination. *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012); *Littlejohn*, 795 F.3d at 311 ("What must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class,

was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."). Unlike Title VII, which permits claims based on a showing that a protected characteristic was a motivating factor, the ADEA requires a plaintiff to plausibly allege that age was the but-for cause of the adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173 (2009) ("Because Title VII is materially different with respect to the relevant burden of persuasion . . . [Title VII] do[es] not control [the] construction of the ADEA.").

Here, as with her Section 1981 claim, Plaintiff fails to plead facts that plausibly support an inference that age was the determinative cause of Defendant's actions. Plaintiff alleges disparate treatment of other substitute teachers, but she does not identify any similarly-situated younger individuals who were treated more favorably. *See Graham*, 230 F.3d at 39 ("[P]laintiffs must show that they were similarly situated in all material respects to the individuals with whom they seek to compare themselves."). As with her Section 1981 claim, generalized allegations of unfair treatment without comparator evidence are insufficient to state a viable ADEA claim. *See Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011) (noting that in the absence of allegations of "preferential treatment given to similarly situated [younger] individuals . . . dismissal at the pleading stage is warranted") (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 (2006)).

Accordingly, Plaintiff's ADEA claim must be dismissed pursuant to Rule 12(b)(6) because it fails to state a plausible claim.

### V.     Hostile Work Environment Claim

In her *pro se* Amended Complaint, Plaintiff checked the box alleging a hostile work environment. (*See* Am. Compl. at 4.) Although she merely checked the box, the Court must construe her Amended Complaint to raise the strongest possible arguments and construe it as an assertion of a cause of action. *See Burgos*, 14 F.3d at 791. This claim also fails.

As an initial matter, the Court must identify the appropriate legal framework, given that Plaintiff does not expressly state which statute governs her claim. In the present case, Plaintiff alleges mistreatment based on her race, national origin, and age. Because Title VII prohibits discrimination based on race and national origin and recognizes hostile work environment claims, the Court analyzes her allegations of race and national origin-based harassment under Title VII. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). Although age is not protected under Title VII, the Second Circuit has held that a hostile work environment claim may also be brought under the ADEA if the alleged conduct is sufficiently severe or pervasive. *See Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003). Accordingly, the Court also considers age-based allegations in its analysis. *See id.* at 148 ("[Title VII] standards apply to hostile work environment claims brought under the ADEA.").

To state a viable hostile work environment claim under Title VII, Plaintiff must allege that (1) she belongs to a protected class; (2) experienced unwelcomed harassment; (3) the harassment was severe or pervasive; and (4) such harassment was motivated by her protected class. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonabl[y] interferes with employee's work performance." *Id.* at 23.  The test includes both subjective and objective components—*i.e.*, the

plaintiff must personally perceive the environment as hostile, and a reasonable person must also find it hostile or abusive. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

While Plaintiff may have subjectively viewed her work environment as hostile, her allegations do not demonstrate an objectively hostile or abusive workplace. *See Harris*, 510 U.S. at 21 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."). Courts have found the "severe or pervasive" standard met in cases involving egregious verbal assaults, repeated racial epithets, or physically threatening behavior. *See Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (finding a viable hostile work environment claim based on a public, gender-based verbal assault by a colleague); *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir. 1999) (finding a viable hostile work environment claim where the plaintiff endured repeated racial and sexist comments by coworkers and supervisors); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (concluding that persistent racial and sexual slurs by a supervisor supported a viable hostile work environment claim).

In contrast, while Plaintiff describes certain unfavorable aspects of her working conditions, her allegations do not support a plausible finding that the conduct was sufficiently severe or pervasive to alter the terms or conditions of her employment. Notably, Plaintiff concedes that she was able to continue working from May 2019 until the spring of 2020 without any disturbances attributable to Defendant. (*See* Opp. at 6.) Moreover, after this period, contact with the Defendant was limited and sporadic due to COVID, as she was not permanently assigned to a school and worked a limited per diem schedule. (*Id.* at 2.) These factors undermine any plausible

inference that she was subjected to the sustained or severe harassment required to establish a hostile work environment.

Most critically, Plaintiff fails to plausibly allege that the wrongful conduct was motivated by her protected characteristics. Allegations of unfair treatment, without factual content linking that treatment to a protected class, are insufficient to support a hostile work environment claim. *See Lizardo v. Denny's Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) (dismissing claim where plaintiff "ha[s] done little more than cite to their mistreatment and ask the court to conclude that it must have been related to [a protected characteristic]").

Accordingly, Plaintiff's hostile work environment claim must be dismissed under Rule 12(b)(6) for failure to state a plausible claim.

## VI.     Retaliation Claim

In her *pro se* Amended Complaint, Plaintiff checked the box for retaliation. (*See* Am. Compl. at 4.) The Court construes this to raise the strongest possible argument and construes it as an assertion of a cause of action. *See Burgos*, 14 F.3d at 791. For the same reasons that her hostile work environment claim is analyzed under Title VII, the Court evaluates her retaliation claim under that statute. This, too, fails.

To state a claim for retaliation under Title VII, a plaintiff must generally show that "(1) he engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) his employer was aware of that activity; (3) he suffered a materially adverse employment action; and (4) there was a causal connection between protected activity and the adverse employment action." *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014). As to the first element, "An employee engages in a protected activity when she complains of an

employment practice that she reasonably believes violates the law." *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011). Protected activity extends to more "informal protests of discriminatory employment practices, including making complaints to management, . . . protesting against discrimination[,] . . . and expressing support of co-workers who have filed formal charges" *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (citing *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989)).

As to the second element, plaintiffs must plead sufficient facts to evidence "general corporate knowledge that the plaintiff has engaged in a protected activity." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). As to the third element, an adverse employment action is one where "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). Finally, as to the fourth element, causation may be shown "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant," or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (quoting *Gordon*, 232 F.3d at 117).

Here, Plaintiff fails to allege facts sufficient to satisfy the knowledge requirement under the second prong. "Implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev Corp.,* 136 F.3d 276, 292 (2d Cir. 1998). Plaintiff vaguely asserts that she

was retaliated against by being terminated from her position for "opposing discriminatory behavior." (Opp. at 10.) This conclusory assertion fails to provide notice of the nature of the discriminatory conduct she allegedly opposed or how she opposed it, particularly given the informal nature of the allegation. *Cf. Dodd v. City of New York*, 489 F. Supp. 3d 219, 246 (S.D.N.Y. 2020) ("The clearest example of [protected] activity is the filing of a lawsuit alleging unlawful discrimination."). Absent factual allegations linking the alleged protected activity to the employer's knowledge, the Am. Compl. does not support a plausible inference that Defendant reasonably understood Plaintiff's conduct to be protected under Title VII.

Accordingly, Plaintiff's retaliation claim must be dismissed pursuant to Rule (12)(b)(6) for failure to state a claim.

### VII. NYSHRL Claim

Because Plaintiffs' federal claims must be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' NYSHRL claim. *See* 28. U.S.C. § 1367(c) (allowing a district court to decline the exercise of supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction"). Accordingly, Plaintiff's NYSHRL claim is dismissed without prejudice.

### VIII. Leave to Amend

The Second Circuit has advised that "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend [their] complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."

*Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999) (per curiam). Accordingly, the Court dismisses all of Plaintiff's claims without prejudice, granting leave to amend.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Specifically, Plaintiff's Title VII, Section 1981, ADEA, and NYSHRL claims are dismissed without prejudice. Additionally, Plaintiff is granted leave to file a Second Amended Complaint. Plaintiff will have until August 25, 2025 to do so, consistent with this order. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the Amended Complaint, and so any claims they wish to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiff file a Second Amended Complaint, Defendant is directed to answer or otherwise respond to the Second Amended Complaint by September 25, 2025.

If Plaintiff fails to file a Second Amended Complaint within the time allowed, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice and the case will be terminated.[1] The Clerk of Court is kindly directed to terminate the motions at ECF Nos. 35 and 39.

Dated: July 24, 2025  
       White Plains, New York

SO ORDERED:

_____  
Hon. Nelson S. Roman  
United States District Court, SDNY

---

[1] In the event Plaintiff's federal claims are dismissed with prejudice, her state court claims will be deemed dismissed without prejudice to recommence in state court.