USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 
DATE FILED: 11/6/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANA PELL,

Plaintiff,

–against–

THE YONKERS CITY SCHOOL DISTRICT,

Defendants.

7:23-CV-10398 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Ana Pell, proceeding pro se, brings this action against the Yonkers City School District ("Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17; 42 U.S.C. § 1981 ("Section 1981"); the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 -634; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-297, N.Y. City Admin. Code §§ 8-101-8-131.

Presently before the Court is Defendant's motion to dismiss all claims in Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

The following facts are derived from Plaintiff's Second Amended Complaint ("SAC") and her opposition to Defendant's motion to dismiss ("Opp."). Because Plaintiff proceeds pro se, the Court considers factual allegations in her opposition papers to the extent they are consistent with the SAC. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). The facts are accepted as true for purposes of the instant motion.

Plaintiff Ana Pell is a Hispanic woman of Spanish national origin who was born in 1963. (SAC at 2, 5.) She was employed by Defendant as a substitute teacher from May 2019 until September 2022. (*Id*. at 5.) During this period, Plaintiff was working toward obtaining her teaching certification in Spanish for grades seven through twelve. (*Id*.) Plaintiff alleges that she was subjected to discriminatory treatment based on her age, race, and national origin throughout her employment.

In May 2019, Plaintiff was hired as a per diem substitute teacher and assigned to School #30, where she worked in a long-term assignment until April 2020. (*Id*.) Plaintiff alleges that, although she was classified and compensated as a per diem substitute, she performed the duties of a full-time substitute teacher. She further alleges that she was required to prepare lesson plans and cover multiple classes while other similarly situated substitute teachers received lesson plans and more favorable assignments. Plaintiff also asserts that she was denied access to workplace resources, including a district email account, employee identification badge, and online training opportunities available to other substitute teachers.

Plaintiff further alleges that she experienced continuous harassment and mistreatment by two supervisors: an employee of Defendant's personnel department and a clerk in the administration office at School #30. According to Plaintiff, the two individuals worked together to misclassify her employment position, deny her access to workplace resources, and otherwise subject her to unfavorable working conditions.

Plaintiff's assignment at School #30 ended in April 2020 following the COVID-19 pandemic and the transition to remote learning. Plaintiff alleges that, although she remained in Defendant's substitute-teacher system, she was excluded from communications and employment opportunities during the pandemic.

In September 2021, Plaintiff's supervisor contacted her regarding another assignment at School #30. Plaintiff declined the assignment because she wanted to pursue a position related to her teaching certification. In October 2021, Plaintiff applied for a full-time Spanish teaching position at Roosevelt High School and participated in an interview and demonstration lesson. Plaintiff alleges that her supervisor subsequently contacted her regarding the position but refused to provide written information concerning its terms and conditions. Plaintiff states that she complained about her prior treatment and requested greater transparency regarding the proposed assignment. According to Plaintiff, her supervisor did not provide the requested information, and Plaintiff did not receive the position.

Finally, Plaintiff alleges that in September 2022, when she sought to resume working as a substitute teacher, she discovered that she no longer had access to Defendant's online substitute-teacher system. Plaintiff interpreted this loss of access as the termination of her employment and asserts that Defendant terminated her in retaliation for opposing discriminatory treatment.

Plaintiff also alleges that other older Hispanic or immigrant women experienced similar treatment by Defendant, including unfavorable substitute-teacher placements and the loss of employment opportunities. She contends that her treatment resulted from a broader discriminatory policy or practice maintained by Defendant.

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 28, 2023. (ECF No. 1.) She subsequently filed an Amended Complaint on April 10, 2024. (ECF No. 22.) On July 24, 2025, the Court granted Defendant's motion to dismiss the Amended Complaint and afforded Plaintiff an opportunity to amend her pleading. (ECF No. 41.) Plaintiff filed the SAC on October 10, 2025. (ECF No. 46.)

Defendant now moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 53.)

**LEGAL STANDARD**

Fed. R. Civ. P. 8(a)(2) requires that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows a defendant to seek dismissal a claim where the complaint fails to state a claim upon which relief can be granted. In deciding a Rule 12 (b)(6) motion, the Court limits its review of "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken." *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels v. Air Transp. Local* 504, 992 F.2d 12, 15 (2d Cir. 1993)).

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). A claim is facially plausible when the plaintiff pleads facts sufficient to allow a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Instead, the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While courts are obligated to accept all factual allegations in the complaint as true, they are "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

In cases involving pro se plaintiffs, courts apply "less stringent standards than those drafted by lawyers." *Thomas v. Westchester County*, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013). In accordance with this standard, courts construe their submissions liberally and interpret them to

raise the strongest arguments they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994). Additionally, courts may "consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Walker*, 717 F.3d at 122 n.1. However, even under this liberal standard, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).

## DISCUSSION

### I. Title VII Claim

Plaintiff asserts a Title VII claim based on race and national origin. Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In adopting this language, 'Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination based on race, religion, sex, or national origin.'" *Banks v. Gen. Motors*, LLC, 81 F.4th 242, 269 (2d Cir. 2023). The Defendant argues that most of the Plaintiff's allegations supporting her Title VII claim are procedurally barred as untimely.

#### a. Timeliness of Plaintiff's Allegations

Before brining a claim under Title VII, a plaintiff must file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See Byas v. Yonkers Public Schools*, No. 23-CV-8437, 2026 WL 963977, at *6 (S.D.N.Y. Mar. 31, 2025). In New York, which is a deferral state, the charge must be filed within 300 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1). However, an exception to this rule applies when the

plaintiff experiences a "continuous practice and policy of discrimination." *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1992)). Under such circumstances, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Id.* If a continuing violation is found, a court must then "consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Snowden v. Southerton*, No. 22-CV-514, 2023 WL 3601654, at *7 (S.D.N.Y. May 23, 2023). The continuing violation doctrine is heavily disfavored in the Second Circuit, and courts apply it only in "compelling circumstances." *Falinski v. Kuntz*, 38 F. Supp. 2d 250, 257 (S.D.N.Y. 1999) (citing *Davis v. City Univ. of New York*, No. 94 CIV. 7277, 1996 WL 243256, at *10 (S.D.N.Y. May 8, 1996)).

Here, Plaintiff filed her EEOC complaint on June 5, 2023, and the EEOC's right to sue letter was issued August 28, 2023. The only conduct occurring on or after August 9, 2022, falls within the applicable 300-day window. Most of Plaintiff's allegations predate the cutoff, except for her claims that she was wrongfully terminated in September 2022 and that her calls went unanswered afterward. Standing alone, these allegations appear isolated and distinct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.").

Although Plaintiff alleges that Defendant engaged in a continuous pattern of discrimination beginning with her hiring in May 2019, the SAC does not plausibly establish an ongoing discriminatory policy or practice sufficient to invoke the continuing violation doctrine. Plaintiff's allegations concerning her employment classification, denial of workplace resources, unfavorable assignments, and failure to obtain a teaching position concern discrete employment actions

occurring outside the limitations period. *See Morgan*, 536 U.S. at 114. Accordingly, Plaintiff's allegations of discrete discriminatory acts occurring before August 9, 2022, are time-barred. The Court nevertheless may consider those allegations as background evidence in evaluating Plaintiff's timely claim. *See id*. at 113.

### b. Failure to State a Claim

Despite most of Plaintiff's allegations being time barred, the Supreme Court has clarified that a single discrete act may give rise to a Title VII claim. *See Morgan*, 536 U.S. at 113. ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'").

To state a claim for employment discrimination under Title VII, a plaintiff must plausibly allege that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). At the pleading stage, a plaintiff need only allege facts providing minimal support for the proposition that her employer was motivated by discriminatory intent. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Here, Plaintiff fails to plausibly allege that her race or national origin was a motivating factor in Defendant's decision to terminate her employment. Plaintiff alleges that, in September 2022, she discovered that she had been denied access to Defendant's online substitute-teacher system, preventing her from obtaining further assignments. Although Plaintiff attributes her termination to Defendant's discriminatory practices, she does not allege sufficient facts connecting the loss of system access to her race or national origin.

Plaintiff also alleges that she was subjected to unfavorable employment conditions, including misclassification of her position, denial of workplace resources, and excessive work assignments. However, these allegations do not plausibly establish that her subsequent termination was motivated by discriminatory animus. Although Plaintiff asserts that similarly situated employees outside her protected classes received more favorable treatment, she provides insufficient factual detail concerning those employees or the circumstances of their treatment to support an inference of discrimination. Nor do her allegations concerning the mistreatment of other Hispanic immigrant women, without more, plausibly establish that her termination occurred because of her protected characteristics. Accordingly, Plaintiff fails to allege facts giving rise to a plausible inference of discriminatory intent. *See Vega*, 801 F.3d at 86–87.

Accordingly, Plaintiff's Title VII discrimination claim must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## II. Section 1981 Claim

Plaintiff asserts a claim pursuant to 42 U.S.C. § 1981 ("Section 1981"), alleging that she was subjected to discriminatory treatment based on her Hispanic origin.

Section 1981 provides:

> [A]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). To state a plausible claim pursuant to Section 1981, a plaintiff must allege facts supporting that (1) the plaintiff is a member of a racial minority, (2) the defendant's intent to discriminate on the basis of race, and (3) discrimination concerning one of the statute's enumerated activities. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (citing *Mian v. Donaldson,*

*Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Section 1981 claims of racial discrimination are generally analyzed under the same standard as Title VII claims of discrimination. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). However, Section 1981 claims are subject to a more stringent causation standard, requiring a showing of but-for causation where the plaintiff must show race was the determinative cause of the adverse action. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) ("To prevail, a plaintiff must initially plead . . . but for race, [they] would not have suffered the loss of a legally protected right.") (emphasis added).

Here, Plaintiff fails to plausibly allege that Defendant intentionally discriminated against her because of her race. Although Plaintiff alleges that she was subjected to unfavorable employment conditions, including misclassification of her position, denial of workplace resources, and excessive work assignments, she provides insufficient factual allegations connecting this treatment to her Hispanic origin. (SAC at 10–14.) Plaintiff also asserts that similarly situated employees outside her protected class received more favorable treatment but fails to provide sufficient details concerning those employees or the circumstances of their treatment to support an inference of racial discrimination. (*Id*. at 7, 12–14.) Moreover, although Plaintiff alleges that other Hispanic immigrant women experienced similar mistreatment, including unfavorable employment assignments and forced retirement, these allegations, without more, do not plausibly establish that race was the but-for cause of Defendant's actions. (*Id*. at 11.) Accordingly, Plaintiff's generalized allegations of disparate treatment, without sufficient facts connecting Defendant's conduct to her race, fail to satisfy Section 1981's causation requirement. *See Comcast Corp*., 589 U.S. at 341.

Accordingly, Plaintiff's Section 1981 claim must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## III. ADEA Claim

Plaintiff brings a claim under the ADEA, alleging that she was subjected to discriminatory treatment based on her age.

The ADEA prohibits employers from taking discriminatory employment actions "because of [an] individual's age." 29 U.S.C. § 623(a)(1). To state a viable ADEA claim, a plaintiff must plausibly allege that: (1) she was at least 40 years old; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of age discrimination. *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012); *Littlejohn*, 795 F.3d at 311 ("What must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."). Unlike Title VII, which permits claims based on a showing that a protected characteristic was a motivating factor, the ADEA requires a plaintiff to plausibly allege that age was the but-for cause of the adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173 (2009) ("Because Title VII is materially different with respect to the relevant burden of persuasion . . . [Title VII] do[es] not control [the] construction of the ADEA.").

Here, Plaintiff fails to plausibly allege that age was the but-for cause of Defendant's actions. Although Plaintiff alleges that she was treated less favorably than similarly situated younger substitute teachers, she provides insufficient factual detail concerning those employees or the circumstances of their treatment to support an inference of age discrimination. (SAC at 7, 12–14.) Plaintiff also alleges that other older immigrant women experienced similar mistreatment, including unfavorable employment assignments and forced retirement. (*Id*. at 11.) However, these

allegations do not plausibly establish that Defendant's conduct toward Plaintiff, including her alleged termination in September 2022, was motivated by her age. Nor does Plaintiff allege any age-related remarks or other circumstances suggesting that age was the determinative factor in Defendant's employment decisions. Accordingly, Plaintiff's generalized allegations of disparate treatment, without sufficient facts connecting that treatment to her age, fail to state a plausible claim under the ADEA. *See Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011).

Accordingly, Plaintiff's ADEA claim must be dismissed pursuant to Rule 12(b)(6) because it fails to state a plausible claim.

## IV. Hostile Work Environment Claim

Plaintiff also asserts a hostile work environment claim based on her race, national origin, and age. (SAC at 3, 12–16.) The Court analyzes her race and national origin claims under Title VII and her age-based claim under the ADEA. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

To state a hostile work environment claim, Plaintiff must plausibly allege that she was subjected to harassment that was sufficiently severe or pervasive to alter the conditions of her employment and create an objectively abusive working environment, and that the harassment occurred because of her protected characteristics. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993); *Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002).

Here, Plaintiff alleges that she experienced continuous harassment by two supervisors between May 2019 and April 2020. (SAC at 12.) Specifically, Plaintiff asserts that she was misclassified in

her employment position, denied access to workplace resources, assigned excessive work responsibilities, and excluded from professional development opportunities. (*Id.* at 12–15.) Although Plaintiff characterizes this conduct as continuous harassment, her allegations primarily concern unfavorable employment conditions and difficult interactions with her supervisors, rather than conduct sufficiently severe or pervasive to create an objectively abusive work environment. *See Alfano*, 294 F.3d at 374.

More importantly, Plaintiff fails to plausibly allege that the challenged conduct was motivated by her race, national origin, or age. Although Plaintiff asserts that similarly situated employees outside her protected classes received more favorable treatment, she provides insufficient factual detail concerning those employees or the circumstances of their treatment to support an inference of discriminatory animus. Nor does Plaintiff allege other facts plausibly connecting her supervisors' conduct to her protected characteristics. Allegations of unfair treatment, without more, are insufficient to establish a hostile work environment claim. *See Lizardo v. Denny's Inc.*, 270 F.3d 94, 104 (2d Cir. 2001).

Accordingly, Plaintiff's hostile work environment claim must be dismissed under Rule 12(b)(6) for failure to state a plausible claim.

## V. Retaliation Claim

Plaintiff also asserts a retaliation claim, alleging that Defendant terminated her employment after she opposed discriminatory employment practices. (SAC at 17–19.) The Court construes Plaintiff's allegations as asserting a retaliation claim under Title VII.

To state a claim for retaliation under Title VII, a plaintiff must generally show that "(1) he engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) his employer was aware of that activity; (3) he suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014). As to the first element, "An employee engages in a protected activity when she complains of an employment practice that she reasonably believes violates the law." *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011). Protected activity extends to more "informal protests of discriminatory employment practices, including making complaints to management, . . . protesting against discrimination[,] . . . and expressing support of co-workers who have filed formal charges" *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (citing *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989)).

As to the second element, plaintiffs must plead sufficient facts to evidence "general corporate knowledge that the plaintiff has engaged in a protected activity." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). As to the third element, an adverse employment action is one where "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). Finally, as to the fourth element, causation may be shown "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant," or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (quoting *Gordon*, 232 F.3d at 117).

Here, Plaintiff fails to plausibly allege that she engaged in protected activity of which Defendant was aware or that her alleged termination was causally connected to such activity. Unlike her Amended Complaint, the SAC provides additional details concerning Plaintiff's purported opposition to Defendant's discriminatory conduct. Specifically, Plaintiff alleges that she repeatedly complained to her supervisor about her employment classification and the disparate treatment she was receiving. (SAC at 16.) Plaintiff further alleges that, in October 2021, after interviewing for a full-time Spanish teaching position, she complained to her supervisor about the discriminatory treatment she had experienced and requested that the terms and conditions of the position be provided in writing. (*Id*. at 17.) According to Plaintiff, her supervisor responded impatiently, ended their telephone conversations, and failed to provide the requested information. (*Id*.) Plaintiff contends that she was subsequently denied the position in retaliation for opposing her supervisor's discriminatory conduct. (*Id*.) To the extent Plaintiff also asserts a retaliation claim based on Defendant's failure to offer her the October 2021 teaching position, that claim is untimely because the alleged employment decision occurred outside the applicable 300-day limitations period.

Although Plaintiff now identifies specific instances in which she complained to her supervisor, the SAC still fails to plausibly allege that Defendant understood, or reasonably could have understood, that Plaintiff was opposing conduct prohibited by Title VII. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Plaintiff's complaints primarily concerned her employment classification, unfavorable work assignments, and her supervisor's failure to provide written information regarding potential employment opportunities. While Plaintiff characterizes these complaints as opposition to discriminatory treatment, she does not allege that she informed her supervisor that she believed such treatment was motivated by her race

or national origin, or otherwise provide sufficient facts from which the Court could reasonably infer that her supervisor understood her complaints to concern unlawful discrimination. Accordingly, Plaintiff's conclusory characterization of her complaints as protected opposition is insufficient to establish that Defendant was aware of activity protected under Title VII.

Moreover, even assuming Plaintiff engaged in protected activity, the SAC fails to plausibly allege a causal connection between that activity and her alleged termination in September 2022. Plaintiff's most specific allegations concerning her opposition to Defendant's conduct occurred in October 2021, approximately eleven months before she discovered that she no longer had access to Defendant's online substitute-teacher system. (SAC at 17–19.) This temporal gap, without additional allegations suggesting retaliatory animus, is insufficient to support a plausible inference of causation. Nor does Plaintiff allege facts otherwise connecting her supervisor's alleged dissatisfaction with her complaints to the subsequent loss of access to the substitute-teacher system. Plaintiff's belief that her termination resulted from opposing her supervisor's conduct, without more, is insufficient to state a plausible retaliation claim.

Accordingly, Plaintiff's retaliation claim must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## VI. NYSHRL and NYCHRL Claims

Because Plaintiff's federal claims must be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and local law claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). See 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental

jurisdiction where it "has dismissed all claims over which it has original jurisdiction"). Accordingly, Plaintiff's NYSHRL and NYCHRL claims are dismissed without prejudice.

## VII. Leave To Amend

Finally, the Court declines to grant Plaintiff further leave to amend. Although leave to amend should be freely granted when justice so requires, Fed. R. Civ. P. 15(a)(2), a court may deny leave where amendment would be futile. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). Here, Plaintiff requests further leave to amend in her opposition papers. However, Plaintiff was previously afforded an opportunity to amend her pleading after the Court identified the deficiencies in her claims. Despite that opportunity, the SAC fails to cure those deficiencies, and Plaintiff has not identified additional facts suggesting that further amendment would permit her to state a viable federal claim. Accordingly, the Court concludes that further amendment would be futile.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is GRANTED. Plaintiff's federal claims are dismissed with prejudice, and her state and local law claims are dismissed without prejudice to re-assert in the proper forum. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 53 and to terminate the action.

SO ORDERED.

Dated: November 6, 2026
White Plains, New York



Nelson S. Román, U.S.D.J.